IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JASON E. RUNKLE,                           )
                          Plaintiff,       )
                                           )
        vs.                                ) Civil Action No. 13-137
                                           ) Magistrate Judge Maureen P. Kelly
COMMONWEALTH OF                            )
PENNSYLVANIA, DEPARTMENT OF                )
CORRECTIONS; JOHN E. WETZEL;               )
RICHARD S. ELLIS; NICOLAS SCHARFF)
BRIAN THOMPSON; SCOTT MORGAN;  )
KIMBERLY BOAL; EDWARD                      )
HORNEMAN; MICHAEL                          )
MAHLMEISTER; KEITH McCOY;                  ) Re: ECF Nos. 16, 18
DEBORAH GOSNELL,                           )
                          Defendants.      )

## OPINION AND ORDER

**KELLY, Magistrate Judge**

        Plaintiff, Jason E. Runkle ("Plaintiff "), is an inmate in the custody of the Pennsylvania

Department of Corrections ("the DOC"), and is currently incarcerated at the State Correctional

Institution ("SCI") at Mercer.  Plaintiff brings this civil rights action alleging that Defendants

have been deliberately indifferent to his medical needs by failing to provide him with treatment

for Hepatitis C in violation of the Eighth Amendment to the United States Constitution while he

has been housed at SCI Mercer.  Plaintiff also purports to proceed as a class representative of all

prisoners within the DOC who, like Plaintiff, have been diagnosed with Hepatitis C and have

been denied treatment based on the length of their sentences.

        Presently before the Court is a Motion to Dismiss Plaintiff's Complaint, ECF No. 16,

submitted on behalf of Defendants Scott Morgan ("Morgan"), Edward Horneman ("Horneman")

and Deborah Gosnell ("Gosnell") (collectively "the Medical Defendants"), and a Motion to

Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil procedure 12(b)(6), ECF No. 18,

submitted on behalf of Defendants the DOC, John E. Wetzel ("Wetzel"), Richard S. Ellers ("Ellers"),[1] Nicholas Scharff ("Scharff"), Brian Thompson ("Thompson"), Kimberly Boal ("Boal"), Keith McCoy ("McCoy"), and Michael Mahlmeister ("Mahlmeister") (collectively, "the DOC Defendants"). For the reasons that follow, both Motions will be granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, Plaintiff was sentenced on July 2, 2010, to a period of confinement of one year and six months to five years, less 187 days for time served. ECF No. 1, at ¶ 48. Plaintiff therefore had less than one year remaining on his minimum sentence when he became a ward of the DOC. Id. at ¶¶ 48, 65, 78. On October 28, 2010, following a period of incarceration at SCI Camp Hill for testing and classification, Plaintiff was transferred to his "home facility" at SCI Mercer. Upon his arrival at SCI Mercer, Plaintiff was screened for Hepatitis C and found to be positive. Id. at ¶¶ 49-52. At that time, Plaintiff had approximately 8 months of his minimum sentence left to serve. See id. at ¶¶ 48, 52.

It also appears from the Complaint that the DOC has in place a Hepatitis C Protocol ("the Protocol"), for screening, diagnosing and treating inmates with Hepatitis C. Id. at ¶ 42. According to the Protocol, once an inmate is screened and diagnosed, the length of his or her sentence is reviewed by the Correctional Health Care Administrator ("CHCA") and the Parole Office to determine whether or not the sentence is long enough to complete treatment. Id. at ¶ 44-47. See ECF No. 1-2. Inmates who have fewer than twelve months remaining on their minimum sentence are deemed ineligible for treatment. Id.

Accordingly, on November 8, 2010, when Plaintiff met with Defendant Horneman to discuss his test results, Horneman noted that Plaintiff's minimum sentence was "through June

---

[1] Although Plaintiff has named Richard S. Ellis as a defendant, it appears that his proper name is Richard S. Ellers. See ECF Nos. 1, 18.

2011," and referred him to the Chronic Care Clinic so that Plaintiff's blood work and vital signs could be regularly monitored. Id. at ¶¶ 53, 54. The treatment plan was approved by Defendant Morgan on November 9, 2010. Id. at ¶ 57.

On December 15, 2010, Plaintiff had blood work done again. Id. at ¶ 60. On January 28, 2011, Plaintiff went to the prison infirmary complaining of right side abdominal pain. Defendant Gosnell examined Plaintiff and discovered that Plaintiff had a slight liver enlargement. Gosnell ordered repeat liver function tests in one month, which occurred on February 28, 2011. Id. at ¶¶ 67, 68. Defendant Horneman saw Plaintiff again on March 4, 2011 to review the most recent lab work. Id. at ¶ 69. Plaintiff apparently complained of fatigue at the time and again at an appointment with Horneman on April 25, 2011. Id. at ¶¶ 69, 71. Additional blood work was ordered and performed on April 26, 2011, and again on May 5, 2011, when Plaintiff reiterated his complaints of fatigue. Id. at ¶¶ 72, 76. Plaintiff had blood work done again on June 3, 2011, and saw Defendant Horneman on July 5, 2011, complaining of pain. Id. at ¶¶ 79, 81.

In the interim, it appears that Plaintiff submitted various Inmate Requests to Staff Members, grievances and appeals inquiring about, and/or requesting, treatment for Hepatitis C. Id. at ¶¶ 61, 63, 65, 70, 73, 80, 86, 88, 91, 93. In response to each of Plaintiff's inquiries and/or grievances, he was informed that he was ineligible for treatment because his minimum sentence was less than that allowed to complete treatment, that he therefore did not meet the Protocol criteria, and that appropriate lab work was being done and he was being evaluated according to policy. Plaintiff was also told that he should contact the Medical Department if his release date changed. Id. at ¶¶ 61, 62, 64, 66, 74, 75, 78, 83, 87, 90, 92, 94. See ECF No. 1-2.

Plaintiff was subsequently denied parole on October 24, 2011. Id. at ¶ 84. Plaintiff alleges that he was told at the time that he would have to serve the entirety of his maximum

sentence which would have made him eligible for treatment, but that no further Hepatitis C

testing or treatment has been offered to him.  Id. at ¶ 85.[2]

Plaintiff, through counsel, filed the instant Complaint on January 28, 2013, bringing

claims for "Deliberate Indifference" against Defendants Thompson, Morgan, Mahlmeister,

McCoy, Boal, Horneman and Gosnell (Count I); "Deliberate Indifference (Class Action)" against

Defendants Wetzel, Ellis and Scharff (Count II); "Declaratory Relief (Class Action)" against

Defendants the DOC and Wetzel (Count III); and "Injunctive Relief (Class Action)" against the

DOC and Wetzel (Count IV).  The Medical Defendant's filed a Motion to Dismiss Plaintiff's

Complaint, ECF No. 16, on April 8, 3013, and the DOC Defendants filed a Motion to Dismiss

Plaintiff's Complaint Pursuant to Federal Rule of Civil procedure 12(b)(6), ECF No. 18, on April

9, 2013.  ECF No. 18.  Plaintiff filed a Consolidated Response to Motions to Dismiss in which he

addresses both the Medical Defendants' Motion and that filed by the DOC Defendants.  ECF No.

27.  The Medical Defendants and the DOC Defendants filed reply briefs on June 5, 2013, ECF

Nos. 28, 29, respectively.  As such, both Motions are ripe for review.

## II.     STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under

Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in

the complaint and all reasonable factual inferences must be viewed in the light most favorable to

the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not

accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint.  See California Public Employees' Retirement System v. The Chubb

Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902,

---

[2] Plaintiff also alleges, however, that he was informed on at least two occasions that he was being denied treatment
because he could be paroled at any time and that he would be eligible for further evaluation and treatment if he was
willing to defer parole until treatment is completed.  Id. at ¶¶ 84, 90, 94.

906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III.   DISCUSSION

The Medical Defendants and the DOC Defendants have presented largely the same arguments in their respective Motions to Dismiss and each has incorporated the arguments advances by the other in their briefs. Given the overlap of issues and arguments, the Court will address the Motions together.

### A.      Statute of Limitations

Congress did not specify a statute of limitations for actions arising under 42 U.S.C. § 1983.[3] Wilson v. Garcia, 471 U.S. 261, 266 (1985), *superseded by statute as recognized in*,

---

[3] Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Kasteleba v. Judge, 325 F. App'x 153, 156 (3d Cir. April 28, 2009). Courts, therefore, are to consider Section 1983 actions as tort actions and borrow the statute of limitations for personal injury or tort actions from the appropriate state. Wilson v. Garcia, 471 U.S. at 278. The statute of limitations for personal injury/tort actions in Pennsylvania is two years. 42 Pa. C.S.A. § 5524. See Smith v. Holtz, 87 F.3d 108, 111 n.2 (3d Cir. 1996). As such, for Section 1983 actions brought in the federal courts located within the Commonwealth of Pennsylvania, the appropriate limitations period is two years. Id. See Sameric Corp. of Delaware, Inc. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) (federal courts apply the state statute of limitations for personal injury in Section 1983 cases which in Pennsylvania is two years).

The statute of limitations requires that a complaint be filed within its time limits from the time a cause of action accrues. See Sprint Communications Co., L.P. v. F.C.C., 76 F.3d 1221, 1226 (D.C. Cir. 1996). The date of accrual for claims brought under Section 1983 is governed by federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007); Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998). Under federal law "'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" Montgomery v. De Simone, 159 F.3d at 126, *quoting* Genty v. Resolution Trust Corp, 937 F.2d 899, 909 (3d Cir. 1991). See Wallace v. Kato, 549 U.S. at 388 ("[I]t is the standard rule that [accrual occurs] when the plaintiff has a complete cause of action ... that is, when the plaintiff can file suit and obtain relief") (internal quotations and citations omitted).

According to the Complaint, Plaintiff was screened for Hepatitis C upon his arrival at SCI Mercer on October 28, 2010, and tested positive. ECF No. 1, ¶ 52. Plaintiff was seen by Defendant Horneman on November 8, 2010 to discuss the results of the tests. Although it is not entirely clear from the Complaint whether Plaintiff was specifically told at that time that he

would not receive treatment for his Hepatitis C, Horneman's notes reflect that Plaintiff had a minimum sentence through June 2011, and no treatment or further testing was ordered. Id. at ¶¶ 53, 54. Nevertheless, it is clear from the Complaint that Plaintiff filed grievances on January 8, 2011, and January 18, 2011, complaining that he was being denied treatment.[4] Thus, at the latest, Plaintiff was aware of his injury and had a complete cause of action as of January 18, 2011. Plaintiff therefore was required to file a complaint raising his claims by January 18, 2013. Because Plaintiff did not file the instant Complaint until January 28, 2013, any claim that arose prior to January 28, 2011, is barred by the two year statute of limitations.

In so finding, the Court has necessarily rejected Plaintiff's argument that all of his claims are rendered timely under the continuing violation doctrine.

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir. 1991).

Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001). Accordingly, a plaintiff who seeks to invoke the continuing violation doctrine bears the burden of establishing: (1) that at least one unlawful act occurred within the limitations period, and (2) that the time-barred acts and recent acts should be considered one continuing pattern of violations. West v. Philadelphia Elec. Co., 45 F.3d 744, 754-55. In determining whether conduct constitutes a continuing pattern, courts are to consider: "(1) subject matter-whether the violations constitute the same type . . ., tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in

---

[4] Moreover, Plaintiff specifically described the denial of treatment as constituting deliberate indifference in violation of his Eighth Amendment rights in his appeal to the Secretary following the denial of his grievances. Id. ¶ 70.

the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights." Hairston v. Lappin, 2013 WL 5701637, at *18 (M.D. Pa. Oct. 18, 2013), *quoting* Cowell v. Palmer Twp., 263 F.3d at 292. The third factor requires the court to consider the policy rationale behind the statute of limitations and that "the continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims." Id. Indeed, the continuing violation doctrine does not apply to discrete acts of discrimination or other unconstitutional behavior. Rather, the doctrine applies only when the alleged unconstitutional acts are not individually actionable, but when aggregated make out a cause of action such as a hostile work environment claim. Id. (internal quotation omitted). See McCann v. Astrue, 293 F. App'x 848, 850 (3d Cir. 2008) ("discrete discriminatory acts that are actionable on their own may not be aggregated under a continuing violation theory").[5]

Here, each time Plaintiff was denied treatment for Hepatitis C he had a cause of action available to him. Plaintiff has acknowledged as much, having filed two grievances in January of 2011 complaining of conduct which he himself has categorized as deliberate indifference to his medical needs in violation of his Eighth Amendment rights. The fact that Plaintiff was repeatedly denied treatment does not aggregate those discrete acts into a continuing violation.

---

[5] In fact, virtually all of the cases in which the continuing violation doctrine has been applied are employment discrimination suits based on a hostile work environment as the very nature of a hostile work environment involves repeated conduct or incidents that occur over time. Because it is the cumulative effect that renders the work environment unreasonable, the unlawful practice "cannot be said to occur on any particular day." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002). See Mandel v. M&Q Packaging Corp, 706 F.3d 157, 156 (3d Cir. 2013) ("Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim"). Although the United States Court of Appeals for the Third Circuit has recognized that the continuing violation theory could apply in non-employment civil rights actions, it has actually found it applicable in only a few other cases. See Major Tours, Inc. v. Colorel, 799 F. Supp. 2d 376, 387-88 (D.N.J. 2011). Nevertheless, as found by the District Court of New Jersey, "[t]o the extent that the doctrine applies beyond the employment context, it is clearly confined to the delayed accrual of a claim based on aggregate wrongs." Id. at 388. It does not apply to discrete actionable incidents even where the conduct at issue is repeated as is the case here. See id. at 387 n.3. ("[t]he continuing violation doctrine is a doctrine based on the accrual of claims which are an aggregate of wrongs, no single one of which would give rise to a discrete claim").

See Hunt v. Pa. Dept. of Corrections, 289 F. App'x 507, 509 (3d Cir. 2008), *quoting* Kichline v. Consol Rail Corp., 800 F.2d 356, 360 (3d Cir. 1986) ("[The] continuing conduct of defendant will not stop the ticking of the limitations clock begun when plaintiff obtained [the] requisite information. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy"); Hairston v. Lappin, 2013 WL 5701637, at *18, *relying on* Ozoroski v. Maue, 460 F. App'x 94, 96 (3d Cir. 2011) ("Hairston filed an administrative remedy complaining about the medical treatment he was receiving at the prison. . . . Therefore, at that time, he was aware that he disagreed with his medical treatment and had the facts necessary to put him on notice of the need to investigate his claims of deliberate indifference. . . . [D]efendants' conduct was sufficiently permanent to trigger Hairston's awareness of, and duty to assert, his rights during the limitations period once Hairston filed his administrative remedy on April 22, 2002). See also Major Tours, Inc. v. Colorel, 799 F. Supp. 2d at 389, *citing* Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. at 114 (observing that, in the Title VII context, an employee who is repeatedly turned down for a promotion cannot aggregate those discrete acts into a continuing violation even where the employee does not discover the discriminatory reason for the failure to promote until a pattern emerges). As such, Plaintiff's claims based on conduct that occurred prior to January 18, 2011 are not saved by the continuing violation doctrine and remain barred by the statute of limitations.

## B.     Exhaustion of Administrative Remedies

It is undisputed that under the Prison Litigation Reform Act ("PLRA"), a prisoner filing a Section 1983 action is required to exhaust all administrative remedies before filing a claim in federal court.  42 U.S.C. § 1997(e)(a).[6]  See Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004).  See also Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) ("it is beyond the power of the court to excuse compliance with the exhaustion requirement").

In order to properly exhaust his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules . . . ."  Woodford v. Ngo, 548 U.S. 81, 90–91 (2006).  The DOC's Grievance System Policy, DC–ADM 804, sets out a three-step grievance and appeals process.  First, an inmate is required to legibly set forth all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review."  Spruill v. Gillis, 372 F.3d at 232, 233.  Second, after the initial review by a grievance officer, the inmate has the opportunity to appeal to the Facility Administrator for a second level of review.  Id. at 232.  Finally, an appeal to the Secretary's Office of Inmate Grievances and Appeals is available.  Id.

In addition, the United States Court of Appeals for the Third Circuit has found that the PLRA's exhaustion requirement includes a procedural default component which requires more than "simple" exhaustion; it requires "proper" exhaustion.  Id. at 228, 230.  Thus, where the inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective, claims against an accused individual are procedurally defaulted.

---

[6] Specifically, the PLRA states that:

> No action shall be brought with respect to prison conditions under section 1983 of this Title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as area available are exhausted.

42 U.S.C.1997e(a).

Id. at 234.  See Woodford v. Ngo, 548 U.S. at 90-91 (exhaustion of administrative remedies under the PLRA requires "using all steps that the agency holds out," and "demands compliance with an agency's deadlines and other critical procedural rules") (internal quotations and citations omitted).

Failure to exhaust administrative remedies, however, is an affirmative defense that is to be pleaded by the defendant.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2001).  Thus, as with other affirmative defenses, the plaintiff need not plead exhaustion in the complaint and a defendant may only assert the defense in a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), if it is clear from the face of the complaint that the plaintiff has failed to exhaust.  Id. at 297.

In the instant case, although Plaintiff filed grievances on January 8, 2011 and January 18, 2011, it is clear from the Complaint that Plaintiff failed to exhaust his administrative remedies relative to the claims raised therein.  Plaintiff has alleged in the Complaint that he received a response to the first grievance on January 16, 2011, ECF No. 1, ¶ 64.  Although it is unclear from the Complaint when Plaintiff received a response to the second grievance, it is clear that he failed to file an initial appeal from either grievance until April 3, 2011.  Indeed, Plaintiff states in the appeal that he "was unaware of [his] right to appeal the response to [his] grievance so [he] is appealing the decision now."  Id. at ¶ 70.  Moreover, according to the Complaint, the initial appeal was submitted to the Office of the Secretary of Corrections for Final Grievance Review rather than to the Facility Administrator.  Id. at ¶¶ 70, 77.  Having been informed by the Secretary's Office on May 11, 2011, that he needed to appeal to the Facility Manager first, Plaintiff finally did so on June 15, 2011.  Id. at ¶ 80.  Not surprisingly, the Facility Manager denied Plaintiff's appeal as untimely.  Id. at ¶ 83.  It therefore is clear from the face of the

Complaint that Plaintiff not only failed to exhaust his administrative remedies with respect to the issues raised in the grievances that he filed on January 8, 2011, and January 18, 2011, but that those claims are procedurally defaulted.

This notwithstanding, Plaintiff has also alleged in the Complaint that he filed a third grievance on May 24, 2012, in which he asked to be reevaluated and provided with certain tests and treatment for his Hepatitis. On June 4, 2012, Plaintiff received an initial review response in which he was told that his record had been reviewed and his case discussed with the infection control nurse and that, because he was past his minimum sentence and eligible for parole at any time, he did not have the required time left on his sentence to complete treatment. Plaintiff was also informed that, although he was followed annually, his next evaluation would be in August of 2012, eight months after his last evaluation. Id. at ¶¶ 88, 90. See ECF No. 17, p. 12. Plaintiff submitted an appeal to the Facility Manager on June 7, 2012, which was denied on June 11, 2012. ECF No. 1, ¶¶ 91, 92. Although Plaintiff does not provide a specific date, he has alleged that he filed an appeal to the Secretary's Office within seven days of receiving the Facility Manager's denial at the second level of review. Id. at ¶ 93. Thus, as Defendants have acknowledged, Plaintiff has exhausted the administrative remedies available to him with respect to the grievance he filed on May 24, 2012.

The Medical Defendants nevertheless take issue with the grievance itself, arguing that it fails to comply with DOC policy as Plaintiff did not identify the date or the specific actions taken by the various Defendants that provide the basis for his grievance. Indeed, Plaintiff merely states in the grievance that he is being denied testing and treatment for his Hepatitis C and that he wishes to be reevaluated, have certain tests performed and given all appropriate treatment consistent with current standard of care. Id. at ¶ 88. See ECF No. 27-1, p. 7, ¶ 11; ECF No. 27-

2.  Plaintiff, however, lists in Section B of the grievance that he contacted Defendants Gosnell, McCoy, Horneman, Boal, Morgan, Mahlmeister, Thompson, Ellis, and Scharff before submitting the grievance.  Id.  Although Plaintiff has not set forth specific actions taken by each of the Defendants in this particular grievance, given his history of requests for and/or grievances regarding reevaluation and treatment for his Hepatitis C, it cannot be said that Defendants were unaware of Plaintiff's complaints or deprived of the opportunity to address those complaints. See Porter v. Nussle, 534 U.S. 516, 524-25 (2002) ("Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case").  Accordingly, the Court finds that Plaintiff's grievance was sufficient to put Defendants on notice of Plaintiff's claims and to satisfy the exhaustion requirement.

### C.       Deliberate Indifference

Defendants also argue that Plaintiff has failed to state a plausible claim as the Complaint is devoid of sufficient facts from which it can be inferred that Defendants were deliberately indifferent to his medical needs, particularly as Plaintiff acknowledges in the Complaint that he has received repeated blood tests and medical examinations through the Chronic Care Clinic in accordance with the DOC's Protocol.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to establish an Eighth Amendment violation for failing to provide basic medical treatment, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  See Spruill v. Gillis, 372 F.3d at 235.

In order to establish deliberate indifference, a "plaintiff must make an 'objective' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, a plaintiff must make a 'subjective' showing that defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002), *citing* Wilson v. Seiter, 501 U.S. 294, 298 (1991). Thus, deliberate indifference has been found when a prison official knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. Rouse v. Plantier, 182 F.3d at 197. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011), *quoting* Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, the presence of a risk standing alone is insufficient to establish deliberate indifference where the official did not actually perceive the risk. Farmer v. Brennan, 511 U.S. at 838, 847.

It therefore follows that inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction does not amount to cruel and unusual punishment. Maqbool v. University Hosp. of Medicine & Dentistry of New Jersey, 2012 WL 2374689, at * 9 (D.N.J. June 13, 2012). See Spruill v. Gillis, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable). As such, allegations that the inmate was provided with medical care, but the care was "inadequate," fails to state a cognizable claim. Taylor v. Visinsky, 422 F. App'x 76, 78

(3d Cir.), *cert. denied*, ___ U.S. ___, 132 S. Ct. 406 (2011).  See Jetter v. Beard, 130 F. App'x 523, 526 (3d Cir. 2005), *cert. denied*, 546 U.S. 985 (2005) (noting that while plaintiff would have preferred a different course of treatment, his preference does not establish an Eighth Amendment cause of action); Pilkey v. Lappin, 2006 WL 1797756 at *2 (D.N.J. June 26, 2006) ("refusal to consider inmate's self-diagnoses," or "to perform tests or procedures that the inmate desires" does not amount to cruel and unusual punishment).  Rather, "the decision whether to summon a doctor, like the question of whether certain diagnostic technique or form of treatment should be prescribed, 'is a classic example of a matter for medical judgment,'" and does not give rise to an Eighth Amendment violation.  McNeil v. Redman, 21 F. Supp. 2d 884, 887 (C.D. Ill. 1998), *quoting* Estelle v. Gamble, 429 U.S. at 107.  See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990) (disagreements over medical judgment do not state Eighth Amendment claims).  Accordingly, considerable latitude is given to prison medical authorities in the diagnosis and treatment of patients, and courts are to "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment."  Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), *quoting* Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977).

In the case at issue, it is clear from the Complaint that upon his arrival at SCI Mercer on October 28, 2010, Plaintiff was diagnosed with Hepatitis C and referred to the Chronic Care Clinic so that his blood work and vital signs could be regularly monitored in accordance with the Protocol.  Thereafter, Plaintiff had blood work performed on December 15, 2010, February 28, 2011, April 26, 2011, May 5, 2011 and June 3, 2011.  Plaintiff was also seen by either Defendant Horneman or Gosnell to address his complaints of pain and fatigue as well as the results of his blood tests on November 8, 2010, January 28, 2011, March 4, 2011, April 25, 2011, May 5, 2011

and again on July 5, 2011. Each of these actions were reviewed and approved by Defendant Morgan. Under these circumstances it cannot be said that Defendants refused to provide treatment to Plaintiff or ignored a perceived risk of serious harm.

Plaintiff nevertheless argues that Defendants' deliberate indifference is evidenced by the categorical exclusion from further testing or treatment because of the length of his sentence which constitutes a denial of necessary medical treatment for a non-medical reason. According to the Protocol, however, not only are there other factors -- including medical factors -- that are considered to determine the proper course of treatment in addition to the length of an inmate's sentence, but the Protocol appears to provide for clinical testing and regular follow-up visits to the clinic regardless of an inmate's sentence. See ECF No. 1-2. Moreover, although Plaintiff takes issue with the Protocol itself and categorized the minimum sentence rule as a "non-medical reason" for denying certain tests and treatment, the rule itself appears to be based on a medical reason and, as argued by Defendants, has been found to serve a legitimate penological goal by the United States Court of Appeals for the Third Circuit. In so arguing, Defendants rely on Iseley v. Dragovich, 90 F. App'x 577 (3d Cir. 2004), in which the plaintiff brought precisely the same claim at issue here alleging that, while he was incarcerated at SCI-Coal Township, the defendants violated his rights provided by the Eighth Amendment because they refused to allow him to participate in the Protocol because he was within twelve months of his minimum release date. Although the District Court did not address the issue, the United States Court of Appeals for the Third Circuit declined to remand the case for a decision on the merits finding that to do so would be futile as the plaintiff was unable to establish deliberate indifference. Specifically, the Court stated:

> Nor were the defendants deliberately indifferent to Iseley's serious medical needs when they denied him participation in the Hepatitis C protocol in

> 2000. The Hepatitis C treatment called for in the protocol takes one year to
> complete. The rationale for implementing the minimum sentence rule as
> part of the protocol is spelled out in the DOC's memo of February 8, 2000.
> See MA 127a-129a. Apparently, it is more detrimental to an inmate's health
> to discontinue or interrupt treatment prior to its completion, than it is to
> defer treatment until after his release. Thus, implementing the minimum
> sentence rule as a prerequisite to participation in the Hepatitis C protocol
> served a legitimate penological goal.

Id. at 581. Because the Court of Appeals for the Third Circuit has found that the DOC's policy

regarding treatment for Hepatitis C, in particular the minimum sentence rule, does not constitute

deliberate indifference, this Court is hard pressed to find that the Plaintiff in this case has stated a

claim.

Plaintiff nevertheless argues that Iseley is not controlling because it is a non-precedential

decision and that it is distinguishable from this case because it was decided at the summary

judgment stage of the proceedings and, thus, the parties had the opportunity to develop facts

relative to the DOC's Protocol. Although it cannot be dispute that Iseley is not a precedential

decision, it does not negate the fact that it is directly on point and persuasive authority. In

addition, as the saying goes, the DOC's Protocol "is what it is;" neither the minimum sentence

exclusion, nor the basis for its implementation will be impacted by allowing Plaintiff to engage

in discovery. Moreover, as the Medical Defendants and the DOC Defendants have pointed out,

District Judge Nora Barry Fischer of this Court recently relied on Iseley to dismiss a complaint

with prejudice pursuant to the screening provisions of the PLRA before the complaint had even

been served on the defendants. Butler v. Wetzel, 2013 WL 1087687, at *3-4 (W.D. Pa. Feb. 19,

2013), Report and Recommendation adopted by 2013 WL 1062987 (W.D. Pa. Mar. 14, 2013)

(Fischer, J.). See 28 U.S.C. 1915A. Specifically, the Court found that, because the Court of

Appeals for the Third Circuit found in Iseley that the "DOC's policy concerning implementation

of Hepatitis C treatment does not constitute deliberate indifference," the plaintiff had failed to state a claim.  Id. at *3-4.

Plaintiff has not provided this Court with any basis to diverge from these decisions other than to argue that he has pled sufficient facts to demonstrate that he has not received appropriate medical treatment because of the minimum sentence rule.  If the rule itself has been found constitutionally sound, however, then its implementation by Defendants cannot be said to run afoul of the Eighth Amendment.

### D.     Qualified Immunity

Although not argued by either the Medical Defendants or the DOC Defendants, even if the Court were to find the Protocol violative of the Eighth Amendment it appears clear that the individual Defendants would nevertheless be entitled to qualified immunity.  See Rovner v. Keystone Human Services, 2013 WL 4016490, at *16 n.2 (M.D. Pa. Aug. 6, 2013), *citing* Doe v. Delie, 257 F.3d 309 (3d Cir. 2001) (Courts are entitled to address qualified immunity *sua sponte* where appropriate).

"The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir.), *cert. denied*, 133 S. Ct. 41 (2012), *quoting* Pearson v. Callahan, 555 U.S. 223, 231 (2009).  See Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010).  "[C]learly established rights" are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right.  A plaintiff need not show that the very action in question has previously been held unlawful, but needs to show that in light of preexisting law the unlawfulness was apparent.  McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001), *citing*

<u>Shea v. Smith</u>, 966 F.2d 127, 130 (3d Cir. 1992). Because "[q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,' so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." <u>Sharp v. Johnson</u>, 669 F.3d at 159, *quoting* <u>Malley v. Briggs</u>, 475 U.S. 335, 341, (1986). <u>See</u> <u>Pearson v. Callahan</u>, 555 U.S. at 244; <u>Ray v. Twp. of Warren</u>, 626 F.3d at 173–74.

Given the decision by the Court of Appeals for the Third Circuit in <u>Iseley</u>, it cannot be said that Defendants actions in following the DOC's Protocol and, in particular, the minimum sentence rule violated clearly established law. As such, the individual Defendants are entitled to qualified immunity and Plaintiff's claims of deliberate indifference brought against them at Counts I and II of the Complaint are properly dismissed.

## E.    Eleventh Amendment Immunity[7]

The Court also finds that the DOC is entitled to protection under the Eleventh Amendment which provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[8]

Thus, absent consent by a state, the Eleventh Amendment bars a civil rights suit in federal court against a state, or a department or agency of the state having no existence apart from the state as a defendant. <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974); <u>Laskaris v. Thornburgh</u>, 661 F.2d 23, 25 (3d Cir. 1981), *citing* <u>Mt. Healthy City Board of Education v. Doyle</u>, 429 U.S. 274, 280

---

[7] <u>See</u> <u>Bowers v. National Collegiate Athletic Ass'n</u>, 346 F.3d 402, 417 (3d Cir. 2003) (A court may raise Eleventh Amendment Immunity *sua sponte*).

[8] The United States Supreme Court has long interpreted the Eleventh Amendment as prohibiting suits in federal court against a state by the defendant state's own citizens as well. <u>Tennessee v. Lane</u>, 541 U.S. 509, 517 (2004). <u>See</u> <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890).

(1977). Pennsylvania has specifically withheld consent to suit in federal courts. 42 Pa. C.S.A. § 8521(b) ("Federal courts. Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"). Moreover, it cannot be disputed that the DOC is an administrative department of the Commonwealth of Pennsylvania. See 71 Pa. Stat. § 61 (naming the DOC as an administrative department of the Commonwealth). As such, the DOC is entitled to Eleventh Amendment immunity and is properly dismissed from this action.[9]

## IV.  CONCLUSION

Because the Court has found that Plaintiff has failed to state a claim for deliberate indifference and that the Defendants are otherwise entitled to immunity, the Motion to Dismiss Plaintiff's Complaint submitted on behalf of the Medical Defendants and the Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil procedure 12(b)(6) submitted on behalf of the DOC Defendants will be granted.

Accordingly, the following Order is entered:

AND NOW, this 9th day of December, 2013, upon consideration of the Motion to Dismiss Plaintiff's Complaint submitted on behalf of the Medical Defendants, ECF No. 16, and the Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil procedure 12(b)(6) submitted on behalf of the DOC Defendants, ECF No. 18, and for the reasons set forth above, IT IS HEREBY ORDERED that the Motions are GRANTED.

---

[9] Having found that the DOC is entitled to immunity under the Eleventh Amendment, the Court need not address the DOC's argument that it is not a "person" subject to Section 1983 liability. The Court notes, however, that although state *officials* sued in their official capacities are considered "persons" in a Section 1983 action where injunctive relief, as opposed to monetary damages, is sought, that is because the action is not treated as one being brought against the State. Will v. Michigan Dept. of State Police, 491 U.S. 58, 70-71 (1989). Obviously, the same cannot be said about an action brought against the State itself or an agency thereof. See Doe v. Division of Youth and Family Services, 148 F. Supp. 2d 462, 483 (D.N.J. 2001), *citing* Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993) (the exception to Eleventh Amendment immunity that allows suits for prospective and declaratory relief against state officials is a narrow one and does not apply where the state is named as a defendant).

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if any party wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

/s/ Maureen P. Kelly
MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE

cc:     All Counsel of Record Via CM-ECF